**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

| | |
|---|---|
| EILEEN N. SHAFFER, CHAPTER 7 TRUSTEE for the BANKRUPTCY ESTATE OF DEBTORS DANNY AND JUDY HALL | PLAINTIFF |
| V. | CASE NO. 3:15-CV-00304-HTW-LRA |
| PRIORITYONE BANK | DEFENDANT |

**RESPONSE IN OPPOSITION TO**
**PLAINTIFF'S MOTION TO DETERMINE WAIVER OF THE**
**ATTORNEY CLIENT PRIVILEGE AND WORK PRODUCT DOCTRINE**

**COMES NOW,** PriorityOne Bank (the "Bank") and responds in opposition to the Motion to Determine Waiver of the Attorney Client Privilege and Work Product Doctrine [Doc. 45] filed by Plaintiff Eileen Shaffer, Chapter 7 Trustee for the Bankruptcy Estate of Debtors Danny and Judy Hall (the "Trustee") as follows:

**INTRODUCTION**

On December 30, 2019, the Bank filed its Motion to Vacate or, Alternatively, Modify Arbitration Award [Doc. 43], subsequently amended on January 3, 2020 [Doc. 52] (the "Motion to Vacate"), requesting that this Court vacate the Award under § 10(a) of the FAA or, alternatively, modify the award under § 11(a).[1]  Among other reasons, the Bank argues that the Award should be vacated due on the Arbitrator's evident partiality based on the fact that the Arbitrator had a disqualifying conflict of interest with the Bank and he misrepresented this fact in his Oath of Arbitrator by failing to disclose it and, therefore, the Bank was not aware of the disqualifying conflict until after entry of the Award because it relied upon the Arbitrator's representation.

---

[1] On January 3, 2020, the Bank filed an Amended Motion to Vacate or, Alternatively, Modify Arbitration Award. [Doc. 52].

In response, the Trustee filed a Motion to Determine Waiver of the Attorney Client Privilege and Work Product Doctrine [Doc. 45] and a Motion to Disqualify Counsel from the Law Firm of Adams and Reese LLP [Doc. 50].[2] The Trustee argues that, by raising the evident partiality defense, the Bank voluntarily injected the factual issues of what its attorneys told the Bank about the selection of the Arbitrator and/or the basis of any conflict, resulting in a waiver of the attorney-client privilege and work product doctrine with respect to these issues and requiring disqualification of the Bank's counsel. This is clearly an attempt by the Trustee to harass the Bank and its counsel.

An "at issue" waiver occurs only when a client specifically pleads *reliance* on privileged communications as an element of a claim or defense. Here, the Bank does not specifically plead reliance on any legal advice from its attorneys in support of its Motion to Vacate, nor does the Bank refer to any privileged communications. The privilege is not waived simply because the Trustee believes privileged communications between the Bank and its attorneys are relevant to the Bank's Motion to Vacate. Relevance is *not* the standard for determining waiver of the privilege. For the same reasons, there is no waiver of the protection of the work product doctrine. This is clearly an attempt by the Trustee to distract the Court from the fact that the Arbitrator made false and misleading statements in his Oath of Arbitrator.

For the reasons set forth herein, the Trustee's Motion Determine Waiver of the Attorney Client Privilege and Work Product Doctrine [Doc. 45] should be denied.

---

[2] In the Motion to Disqualify Counsel [Doc. 50], the Trustee argues that the three Adams and Reese attorneys representing the Bank in this proceeding, C. Phillip Buffington, Jr., G. Robert Parrott II, and Timothy J. Anzenberger, must be disqualified because their testimony is relevant and necessary to determine what the Bank knew about the selection of the Arbitrator and when it knew it for purposes of the Bank's Motion to Vacate or, Alternatively, Modify Arbitration Award. The Bank is filing a separate response in opposition to the Motion to Disqualify Counsel contemporaneously with this response.

## BACKGROUND[3]

In November 2015, this Court compelled this dispute to arbitration before the American Arbitration Association ("AAA"), and the AAA appointed John G. Corlew as arbitrator (the "Arbitrator") on February 28, 2017. In his Notice of Appointment, the Arbitrator was required to disclose potential conflicts to the parties and the AAA.[4] The Arbitrator affirmatively answered that he had no conflicts or other disclosures to make. For example, the Arbitrator answered "no" to the following questions:

> 4. Have you had any professional or social relationship with any parties or witnesses identified to date in this proceeding or the entities for which they work?
>
> No.
>
> …
>
> 7. Are there any connections, direct or indirect, with any of the case participants that have not been covered by the above questions?
>
> No.[5]

The Arbitrator concluded his disclosures by affirming that he "ha[d] conducted a check for conflicts and ha[d] **nothing to disclose**."[6] The Arbitrator further acknowledged that his "obligation to check for conflicts and make disclosures is ongoing for the length of [his] service as an arbitrator in this matter, and that failing to make appropriate and timely disclosures may result in [his] removal as arbitrator from the case . . . ."[7] The Arbitrator made false statements in the Arbitrator's Oath by intentionally failing to disclose the lending relationship with the Bank and the fact that a controversy arose with the Bank during the arbitration.

---

[3] The Bank incorporates by reference the background set forth in its Brief in support of its Amended Motion to Vacate or, Alternatively, Modify Arbitration Award [Doc. 53].
[4] *See* Bank's Motion to Vacate or, Alternatively, Modify Arbitration Award [Doc. 52], at Exhibit "E," Notice of Appointment [Doc. 52-11].
[5] *Id.* at 1-2.
[6] *Id.* at 3 (emphasis in original).
[7] *Id.*

But contrary to the these disclosures, the Bank's representatives and attorneys involved in this arbitration were unaware that the Arbitrator was involved in an ongoing lending relationship with the Bank that matured in 2018, resulting in the borrower moving the loan to another financial institution. In fact, during the lending relationship, the Arbitrator was difficult to deal with and not forthcoming with the Bank. Any of these reasons was sufficient to require the Arbitrator to disclose this relationship, but all of these reason overwhelmingly require disclosure of these issues to all parties.

Specifically, the Bank had extended a loan to McInnis & Broadway, LLC, a developer of commercial property in Hattiesburg, Mississippi, in the approximate amount of $709,000.00 in January 2013.[8] The loan was secured by a deed of trust on the borrower's commercial property, and the Arbitrator had personally guaranteed the loan.[9] The borrower had difficulty meeting its obligations under the loan.[10] And over the course of several years, the maturity date would approach without pay off, requiring renewal.[11] This included a renewal in May 2016, less than a year before the Arbitrator was appointed, and another renewal executed in July 2017, shortly after the Arbitrator had been appointed.[12] At that time, the Arbitrator made additional financial commitments to the Bank.

By letter agreement dated July 7, 2017, the Bank and the borrower had agreed that the borrower would either pay 10% down on the principal balance by maturity, plus interest due, any renewal fees or that the borrower would term out the loan.[13] But as the July 2018 maturity date approached, the debt still totaled approximately $679,000.00, and the borrower could or would not

---

[8] *See* Bank's Motion to Vacate or, Alternatively, Modify Arbitration Award [Doc. 52], at Exhibit "F," Affidavit of Robert J. Barnes [Doc. 52-12].
[9] *Id.* at ¶¶ 3-4; Guaranty, attached as Affidavit Exhibit "2".
[10] *Id.* at ¶ 5.
[11] *Id.*
[12] *Id.* at ¶ 6; Modifications, attached as Affidavit Exhibit "3."
[13] *Id.* at ¶ 7; Letter Agreement, attached as Affidavit Exhibit "4."

pay down the principal balance by 10%, as agreed.[14] The loan went into default, and the borrower was put in a position of having to refinance the debt with another institution, satisfying the debt owed to the Bank.[15] During this period of time, the Arbitrator was not forth coming with information needed by the Bank.

At all times the Arbitrator was aware of the loan's continuous renewals and eventual default, as he was providing his personal financial information to the Bank to obtain the renewals, executed the renewals, and executed the letter agreement, noted above. But at no time did the Arbitrator disclose his conflict with the Bank to the AAA or the parties in the arbitration.

Importantly, the Arbitrator's relationship with the Bank—before and during the arbitration—put him in a similar position as the Debtors were here. Like the Debtors, the Arbitrator was a guarantor on a large loan in default, secured by real property. Had the loan not been refinanced, the Bank could have foreclosed on its collateral and sought any deficiency against the Arbitrator (a guarantor) just as the Bank had done with the indebtedness owed by the Debtors (also guarantors on many of the loans at issue). The Arbitrator could have been in the same position as the Debtors during this very arbitration, presumably making the same claims and arguments the Debtors raised in the arbitration.

Ultimately, the Arbitrator issued the Award in Plaintiff's favor and it was delivered to the parties by the AAA on October 31, 2019, rendering a monetary award against the Bank in the amount of $2,711,813.33. As set forth below, the Award and its reasoning contradicted longstanding, well-settled Mississippi law. And even if the Arbitrator's erroneous reasoning had been correct, and even using the Arbitrator's own formula and numbers presented at the hearing, the Arbitrator should have rendered a monetary Award in the *Bank's* favor for a remaining

---

[14] *Id.* at ¶ 8.
[15] *Id.*

deficiency—not the other way around. So the Bank timely submitted a motion for modification of the award to the AAA on November 20, 2019, requesting that the Arbitrator vacate or modify the Award to comply with Mississippi law and otherwise set forth the correct figures.[16]

After receiving the Award from the AAA on October 31, 2019, the Bank discovered that the Arbitrator had a direct conflict with the Bank that the Arbitrator had failed to disclose (and had, in fact, affirmatively denied having). As soon as possible, the Bank filed a motion to disqualify the Arbitrator with the AAA on November 20, 2019, pursuant to the applicable AAA rules and protocols.[17] In the Objection, the Bank requested that the AAA disqualify the Arbitrator and appoint a new arbitrator to conduct a new hearing or, alternatively, decide the Bank's motion to vacate or modify the Award.

Despite an arbitrator's ongoing duty to disclose conflicts—even after an award has been rendered[18]—the AAA declined to disqualify the Arbitrator.[19] And on December 19, 2019, the AAA sent the parties the Arbitrator's decision denying the motion to vacate or, alternatively, modify the Award.[20]

On December 30, 2019, the Bank filed its Motion to Vacate [Doc. 43], subsequently amended on January 3, 2020 [Doc. 52], requesting that this Court vacate the Award under § 10(a) of the FAA or, alternatively, modify the award under § 11(a), based on, among other reasons, the Arbitrator's evident partiality.

---

[16] *See* Motion to Vacate or, Alternatively, Modify Award [Doc. 43]. The Bank subsequently filed an Amended Motion to Vacate or, Alternatively, Modify Award [Doc. 52] on January 3, 2020.
[17] *See* Bank's Amended Motion to Vacate or, Alternatively, Modify Arbitration Award [Doc. 52], at Exhibit "J," Objection to Arbitrator [Doc. 52-16].
[18] *See* AAA Code of Ethics for Arbitrators in Commercial Disputes at Canon I.G., available at https://www.adr.org/sites/default/files/document_repository/Commercial_Code_of_Ethics_for_Arbitrators_2010_10_14.pdf
[19] *See* Bank's Amended Motion to Vacate or, Alternatively, Modify Arbitration Award [Doc. 52], at Exhibit "K," November 22, 2019, Letter [Doc. 52-17].
[20] *Id.* at Exhibit "L," Post-Award Decision [Doc. 52-18].

In response, the Trustee filed a Motion to Determine Waiver of the Attorney Client Privilege and Work Product Doctrine [Doc. 45] and a Motion to Disqualify Counsel from the Law Firm of Adams and Reese LLP [Doc. 50].[21] The Trustee argues that, by raising the evident partiality defense, the Bank voluntarily injected the factual issues of what its attorneys told the Bank about the selection of the Arbitrator and/or the basis of any conflict, resulting in a waiver of the attorney-client privilege and work product doctrine with respect to these issues and requiring disqualification of the Bank's counsel.

For the reasons set forth herein, the Trustee's Motion to Determine Waiver of the Attorney Client Privilege and Work Product Doctrine [Doc. 45] should be denied.

**ARGUMENT**

**A.  The Bank Did Not Voluntarily Inject an Issue Requiring Disclosure of Privileged Information.**

"In Mississippi, the attorney-client privilege is defined as the client's right to refuse to disclose and prevent others from 'disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client . . .'" *Flanagan v. Nationwide Prop. & Cas. Ins. Co.*, 2018 WL 3337267, at *1 (S.D. Miss. Aug. 4, 2017) (citing Miss. R. Evid. 502(b)).

"[A] client waives the privilege by affirmatively relying on attorney-client communications to support an element of a legal claim or defense – thereby putting those communications 'at issue' in the case." *In re Itron, Inc.*, 883 F.3d 553, 558 (5th Cir. 2018) (citations omitted). "In other

---

[21] In the Motion to Disqualify Counsel [Doc. 50], the Trustee argues that the three Adams and Reese attorneys representing the Bank in this proceeding, C. Phillip Buffington, Jr., G. Robert Parrott II, and Timothy J. Anzenberger, must be disqualified because their testimony is relevant and necessary to determine what the Bank knew about the selection of the Arbitrator and when it knew it for purposes of the Bank's Motion to Vacate or, Alternatively, Modify Arbitration Award. The Bank is filing a separate response in opposition to the Motion to Disqualify Counsel contemporaneously with this response.

7

words, when a party entitled to claim the attorney-client privilege uses confidential information against his adversary (the sword), he implicitly waives its use protectively (the shield) under that privilege." *Id.* (citing *Willy v. Admin. Review Bd.*, 423 F.3d 483, 497 (5th Cir. 2005)). In this instance, the Bank is clearly not relying on privileged communication to advance its position and the Trustee is only asserting this position to harass the Bank and its attorneys.

For an "at issue" waiver to occur, the client must specifically plead *reliance* on privileged advice as an element of a claim or defense. *Id.* at 561 (citing *In re Cty. of Erie*, 546 F.3d 222, 229 (2d Cir. 2008); *accord Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994) (collecting cases across jurisdictions)); *see also Conkling v. Turner*, 883 F.2d 431 (5th Cir. 1989) (plaintiff waived privilege by asserting reliance on counsel's advice to toll the statute of limitations); *United States v. Miller*, 600 F.2d 498, 501-02 (5th Cir. 1979) (defendant waived privilege by asserting reliance on advice of counsel); *In re Icenhower,* 755 F.3d 1130, 1141 (9th Cir. 2014) ("[H]aving invoked advice of counsel in support of his position . . . , [defendant] implicitly waived privilege with regard to communications on those subjects"); *Seneca Ins. Co. v. W. Claims, Inc.*, 774 F.3d 1272, 1276-77 (10th Cir. 2014) (plaintiff waived privilege by expressly asserting reliance on advice of counsel to demonstrate that its settlement was reasonable); *United States v. Bauer*, 551 F.3d 786, 790-92 (8th Cir. 2008) (defendants waived privilege by arguing "that the errors and omissions in their bankruptcy filings were the result of sloppy attorneys and poor legal advice") *United States v. Workman*, 138, F.3d 1261, 1263-64 (8th Cir. 1998) (defendant waived privilege by asserting reliance on advice of counsel); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162-63 (9th Cir. 1992) (defendant waived privilege by asserting that its tax position was reasonable because it was based on the advice of counsel); *Jackson Medical Clinic for Women, P.A. v. Moore*, 836 So. 2d 767, 773 (Miss. 2003) (allowing discovery into attorney-client

8

communications when plaintiff asserted reliance on those communications in attempting to toll a statute of limitations); *Bertelsen v. Allstate Ins. Co.*, 796 N.W. 2d 685, 703 (S.D. 2011) ("the key factor is reliance of the client upon the advice of his attorney"). In this instance, the Trustee is fabricating the Bank's reliance on privileged advice in an attempt to harass the Bank and its attorneys and disqualify. At no point did the Bank assert it was relying on privileged advice to advance its position.

The Fifth Circuit and other circuits agree that relevance is *not* the standard for determining waiver of the privilege under the "at issue" theory. *In re Itron, Inc.*, 883 F.3d 553, 561 (5th Cir. 2018) (citing *Rhone-Poulenc*, 32 F.3d 851, 864 (3d Cir. 1994) ("[r]elevance is *not* the standard for determining whether or not evidence should be protected from disclosure as privileged, . . . even if one might conclude that facts to be disclosed are vital, highly probative, directly relevant or even go to the heart of an issue") (emphasis added)); *United States v. Newell*, 315 F.3d 510, 525 (5th Cir. 2002) (no waiver where "the record makes clear that [the client's] good faith defense was not based on advice of counsel, but rather on a simple lack of knowledge of the wrongdoing and absence of intent to participate in it"); *In re Burlington N., Inc.*, 822 F.2d 518, 533 (5th Cir. 1987) ("Attorney/client documents may be quite helpful [to an adversary's argument], but this is not a sufficient basis for abrogating the privilege").

In *In re Itron¸* the Fifth Circuit specifically declined to broaden the "at issue" theory such that waiver occurs whenever the client files a lawsuit to which privileged communications, if disclosed, might prove "highly relevant" – even if the client never relies on or uses those communications to make her case. *In re Itron*, 883 F.3d at 560. The Fifth Circuit held such an expansion of the "at issue" waiver finds no support in the Mississippi Rules of Evidence or any Mississippi case law. *Id.*

There are good reasons for this rule. "'The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law. Its purpose is to encourage full and frank communications between attorneys and their clients and thereby to promote broader public interests in the observance of law and administration of justice.'" *Flanagan*, 2018 WL 3337267, at *2 (quoting *Hewes v. Langston*, 853 So. 2d 1237, 1244 (Miss. 2003)). "But a privilege that gives way whenever its contents become relevant or even 'highly relevant' to an opposing party's arguments cannot serve this purpose. Such a defeatable 'privilege' is hardly a privilege at all." *In re Itron*, 883 F.3d at 562 (citing *U.S. v. Zingsheim*, 384 F.3d 867, 871 (7th Cir. 2004))

As the above authorities make clear, an "at issue" waiver occurs only when the client has made the decision and taken the affirmative step in the litigation to place the advice of their attorney in issue by pleading reliance on the advice of counsel as an element of a claim or defense. Here, there is no waiver because the Bank never "specifically ple[ads] reliance" on any legal advice from its attorneys in its Motion to Vacate, nor does the Bank refer to any "confidential [attorney-client] communications." Rather, the Bank asserts the following in its Motion to Vacate with respect to its evident partiality argument:

- The Arbitrator was required to disclose potential conflicts to the parties and the AAA.

- The Arbitrator affirmatively answered that he had no conflicts or other disclosures to make, when in fact the Arbitrator had a disqualifying conflict of interest arising from his guaranty of a commercial loan with the Bank that he had a duty to disclose but did not.

- The Arbitrator was aware of the loan's continuous renewals and eventual default, as he was providing his personal financial information to the Bank to obtain renewals, executed renewals, and executed a letter agreement with the Bank on July 7, 2017, concerning the repayment of the debt, all during the pendency of the underlying arbitration.

- After the Arbitration Award was entered, the Bank discovered that the Arbitrator had a direct conflict with the Bank that the Arbitrator failed to disclose (and, in fact, affirmatively denied having).

- The Bank's representatives and attorneys involved in the arbitration were unaware of the Arbitrator's undisclosed conflict until after the entry of the Arbitration Award.

*See* [Doc. 53] at 6-9, 20-25. Nowhere in the Motion to Vacate does the Bank assert that it *relied* on any attorney-client communications. In other words, the Bank is not using the attorney-client privilege as a sword and, thus, there is no waiver. *In re Itron*, 883 F.3d at 560 ("[W]hile the sword stays sheathed, the privilege stands.") (quoting *In re Lott*, 424 F.3d 446, 454 (6th Cir. 2005)). As previously stated, the Trustee is only fabricating this issue to distract the Court from the fact that the Arbitrator misled or filed a false Oath of Arbitrator and failed to disclose relevant conflicts initially and subsequently during the arbitration.

The Trustee does not argue that the Bank is *relying* on privileged communications. Rather, the Trustee asserts that "[t]he Bank's knowledge, i.e. what its attorneys told the Bank about the selection of the Arbitrator and/or the basis for any conflict, *is at the center of the Bank's fact based defense*." [Doc. 46] at 6 (emphasis added). In essence, the Trustee urges this Court to adopt the relevance standard that has been specifically rejected by the Fifth Circuit and other courts. *In re Itron*, 883 F.3d at 561 (citing *Rhone-Poulenc*, 32 F.3d at 864 (3d Cir. 1994) ("[r]elevance is *not* the standard . . . . even if one might conclude that facts to be disclosed are vital, highly probative, directly relevant or even go to the heart of an issue."). Simply put, the privilege is not waived merely because Trustee believes privileged communications between the Bank and its attorneys concerning the appointment of the Arbitrator and the undisclosed conflict are relevant to the Bank's Motion to Vacate. Furthermore, the authorities cited by the Trustee do not support waiver in this case because the clients in those cases specifically pled reliance on advice of counsel in

support of a claim or defense. *See Conkling v. Turner*, 883 F.2d 431 (5th Cir. 1989) (plaintiff waived privilege by asserting reliance on counsel's advice to toll the statute of limitations); *Liberty Mut. Ins. Co. v. Tedford*, 644 F. Supp. 2d 753 (N.D. Miss. Feb. 9, 2009) (finding waiver where the client pled reliance on advice of counsel in support of its counterclaim for equitable estoppel).

**B.      The Bank Did Not Waive Protection of the Work-Product Doctrine.**

Similarly, the work product doctrine may be waived where a party puts in issue an attorney's opinion or work product by alleging reliance on the same as an element to a claim or defense. *Willis v. Allstate Ins. Co.*, 2014 WL 1882387, at *4 (S.D. Miss. May 12, 2014) (citing *Liberty Mut. Ins. Co. v. Tedford*, 644 F. Supp. 2d 753 (N.D. Miss. Feb. 9, 2009). Here, there is no waiver of the work product doctrine for the same reasons there is no waiver of privilege. The Bank does not allege that it relied on its attorneys' work product in support of its Motion to Vacate. Moreover, the Trustee does not argue and cannot demonstrate a "substantial need" for waiving the work product doctrine. *See* Fed. R. Civ. P. 26(b)(3)(A).

## CONCLUSION

For the foregoing reasons, the Court should deny the Trustee's Motion to Determine Waiver of the Attorney Client Privilege and Work Product Doctrine [Doc. 45].

Dated: January 16, 2020.

**PRIORITYONE BANK**

By: /s/ Robert Parrott
C. Phillip Buffington, Jr. (MSB No. 7035)
Timothy J. Anzenberger (MSB No. 103854)
ADAMS AND REESE LLP
1018 Highland Colony Parkway, Suite 800
Ridgeland, MS 39157
Telephone: 601.353.3234
Facsimile: 601.355.9708
phil.buffington@arlaw.com
tim.anzenberger@arlaw.com

G. Robert Parrott II (MSB No. 103970)
ADAMS AND REESE LLP
701 Poydras Street, Suite 4500
New Orleans, LA 70139
Telephone: 504.581.3234
Facsimile: 504.566.0210
robert.parrott@arlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this date I electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to all counsel of record.

Dated: January 16, 2020.

/s/ Robert Parrott
*Of Counsel*